### OHME et al. v. CLEVELAND, C., C. & ST. L. RY. CO.

(Circuit Court of Appeals, Seventh Circuit    October 3, 1916.  Rehearing Denied December 11, 1916.)

No. 2278.

QUIETING TITLE ⊜═44(5)—ACTION—POSSESSION—LIMITATION.

A bill to quiet title to property claimed by complainant under a deed, executed in 1855, conveying the property to its predecessor for railroad purposes, *held* not sustained by the evidence, which not only failed to show that complainant was in possession when the suit was commenced, or that it or its predecessors had ever been in possession, but showed, on the contrary, that defendants and their predecessors had been in possession for more than 30 years under a deed purporting to convey title in fee simple.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 92.]

Appeal from the District Court of the United States for the Eastern District of Illinois.

Suit in equity by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company against Ernest A. Ohme, Frank Spitz, and Lena Ritter. Decree for complainant, and defendants appeal.   Reversed.

In 1855 Ebenezer Noyes, being the owner of block 116 of the original town of Mattoon, in Coles county, Ill., executed a deed to the Terre Haute & Alton Railroad Company, appellee's predecessor in title, which recited as follows: "That the said party of the first part for and in consideration of the advan-

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tages to be derived by the construction of the said T. & A. R. R'd and the construction of a depot and other works at the town of Mattoon, in the county of Coles and state aforesaid, have for railroad purposes and to enable said party of the second part to construct their said road, and the erection of other necessary incidental works, and for no other purpose whatever, granted, bargained, and sold, and by these presents, and for the uses and purposes aforesaid, do hereby grant, bargain, sell, and convey to the said party of the second part a certain piece, parcel, or lot of ground in the said town of Mattoon, in the county of Coles and state aforesaid, to wit: Beginning at a point where the western boundary line of the right of way of the Chicago Branch of the Illinois Central Railroad intersects the southern boundary line of the right of way of the said T. & A. R. R'd, and running thence fifty (50) feet southerly with the said western boundary line of the said C. B. Ills. C. R. R'd; thence due west until it intersects the s'd southern boundary line of the right of way of the said T. & A. R. R'd; thence easterly with said boundary line to the place of beginning. To have and to hold the same for the uses and purposes aforesaid and for no other." This deed was recorded in 1858.

In 1857 Noyes conveyed block 116 to one Radcliffe by a deed recorded in the same year. In proceedings brought by Noyes on May 31, 1859, against Radcliffe, the Terre Haute & Alton Railroad, and the Illinois Central Railroad, to set aside this deed, as well as another deed of block 116 charged to have been executed in 1857 by Noyes to the two railroads and delivered to Radcliffe, but never delivered by him to the grantees, a decree was rendered in 1865, which, after reciting that the bill had been dismissed as to the railroads without prejudice, granted the prayer as against Radcliffe. The Supreme Court of Illinois, in reversing this decree for lack of necessary parties to the suit, held that the railroads were not necessary parties and had properly been dismissed from the case. After the cause had been remanded, Noyes amended his bill and filed a bill of revivor against the heirs of Radcliffe. In his amendment, he recited that the bill had been dismissed against the railroads. In the decree rendered in 1871 the court again ordered a dismissal as to the railroad companies, adding thereto, "Said companies having disclaimed all title to or interest in said premises," and by this decree the court not only set aside the deed to Radcliffe, but also adjudged Noyes to be the legal owner and in the legal possession of the property. In 1876 a further and similar decree was rendered as against grantees of Radcliffe, and again the court recited that the railroads had disclaimed any interest in the premises.

By an instrument dated February 19, 1859, the Illinois Central Railroad Company and the Terre Haute, Alton & St. Louis Railroad Company leased to Noyes for a term of 40 years at an annual rental of $1 the following described property: "So much of the right of way of the Illinois Central R. Road Company as lies west of a line drawn west of and thirty feet distant from the central line of said railroad, measuring at right angles to said center line, and parallel thereto and extending from the north line of Broadway avenue in the town of Mattoon to the Terre Haute, Alton & St. Louis Railroad. Also all of the right of way of the Terre Haute, A. & St. L. R. Road Company lying south of a line drawn south of and twenty feet distant from the center line of said Terre Haute, Alton & St. Louis R. Road, measuring at right angles to center line, and parallel thereto, extending from a point thirty-six feet west of the center line of the Illinois Central Railroad southwesterly along said Terre Haute, Alton & St. Louis Railroad two hundred and twelve feet, measuring on the south line of said right of way."

The lessee covenanted inter alia: "That he will within three months from the date hereof finish the hotel upon the above-described premises, furnish it with all needful furniture and keep it as a respectable first-class railroad passenger and eating house during the continuance of this lease. The second party hereby further covenants that the first parties shall be entitled to the exclusive use of the ticket office and baggage room to be completed in said hotel as is marked in place thereof, and that the passenger room thereon

marked shall be kept and appropriated to the use of passengers in a manner becoming a first-class passenger station." The lease further provided: "That nothing in this lease shall be construed as binding the first parties to obtain possession for the second party of any portion of said hotel or the ground on which it stands, and that they the said first parties shall not be involved directly or indirectly in any suits or controversies now existing or which may hereafter arise between any of the original builders, lessees or proprietors of the hotel or in the adjustment of the liens upon the hotel."

The evidence establishes that Radcliffe began the hotel building in 1856 and that it was later completed by Noyes. The building stood partly on the original right of way of the railroads and partly on a portion of that part of block 116 described in the deed of 1855.

In 1876 Noyes conveyed his property to one Henley as trustee. Included therein were the following descriptions: "So much of the 'right of way' of the Illinois Central Railroad Company as lies west of a line drawn west of and thirty-six (36) feet from the center line of said railroad running at right angles to said center line and parallel thereto, and extending from the north line of Broadway avenue in the town of Mattoon to the Terre Haute, Alton & St. Louis Railroad. Also all of the 'right of way' of the Terre Haute, Alton & St. Louis Railroad Company lying south of a line drawn south of and twenty-five feet from the center line of said railroad, measuring at right angles to said center line and parallel thereto, extending from a point thirty-six (36) feet west of the center line of the Illinois Central Railroad south-westerly along said Terre Haute, Alton & St. Louis Railroad two hundred and twelve (212) feet, measuring on the south line of said right of way, said lands being held by grantor herein under lease from said railroad companies and known as the S 'X' House property." After a number of other properties came the following: "Also block one hundred sixteen (116)."

Henley conveyed in 1878 to one Moulton under the following description: "All that part of block one hundred and sixteen in the original town of Mattoon occupied by the hotel known as the Essex House and its appurtenances and so much of the right of way." Then follows the description of the right of way as in the deed from Noyes; then, "being same leased to said E. Noyes by said railroad companies and subject to condition of said lease, to have and to hold the said premises, with the appurtenances thereunto belonging, to the said party of the second part, his heirs and assigns, forever; it being intended to convey hereby the hotel in the city of Mattoon known as the Essex House."

In 1880 Moulton conveyed to Daniel Messer, who had been a tenant of Noyes prior to the conveyance to Henley, and who had continued his tenancy of the hotel property under Henley. In this deed, the description of the property reads: "All that part of block one hundred and sixteen (116) in the original town, now city, of Mattoon occupied by the hotel known as the Essex House and its appurtenances, also so much of the right of way"—describing the right of way as before. The habendum clause is: "To have and to hold the first-mentioned tract in fee simple and the two last-mentioned tracts for the unexpired term of a lease thereof made by the Illinois Central Railroad Company and the Terre Haute, Alton & St. Louis Railroad Company to Eben Noyes dated February 19, A. D. 1859, and recorded in the recorder's office of Coles county, Illinois, in Book 8 of Deeds, on page 542, and subject to all the terms and conditions of said lease. It being intended hereby to convey to said Daniel Messer the property known as the Essex House in the city of Mattoon, Illinois, subject to the rights of the Illinois Central Railroad Company and the Terre Haute, Alton & St. Louis Railroad Company or its successors as shown by said lease."

Defendants claim under mesne conveyances from Daniel Messer, granting that part of block 116 north and east and west of the numbered lots as shown in the Shinn plat and south of the Cleveland, Cincinnati, Chicago & St. Louis Railroad right of way and west of the Illinois Central Railroad right of way. In these deeds no reference is made to the Noyes lease. Shinn's plat is as follows (see next page):

It shows the location of the buildings in 1913.

The bill to quiet title, on which the decree now before us on appeal by the defendants was rendered, alleged plaintiff's and its predecessors' ownership and continuous possession since 1855 under the Noyes deed of 1855 of a part of block 116 described as follows: "Beginning at a point where the western boundary line of the right of way of the Chicago Branch of the Illinois Central Railroad intersected the southern boundary line of the right of way of the Terre Haute & Alton Railroad Company in the year 1855; thence along the west right of way line of the Illinois Central Railroad measure southwesterly fifty (50) feet; thence westwardly fifteen (15) feet along a line parallel with and fifty (50) feet northwardly from the north line of Broadway avenue; thence north at right angles nine-tenths (0.9) feet; thence westwardly twenty-eight (28) feet to a point in said line parallel with the north line of Broadway avenue and fifty (50) feet distant northwardly therefrom; thence westwardly parallel with and fifty (50) feet distant northwardly from the north line of Broadway avenue eighty-eight and two-tenths (88.2) feet; thence northwardly at right angles seven and one-tenth (7.1) feet; thence one hundred fifty-three and five-tenths (153.5) feet to the place of beginning." It charged that the conveyance from Noyes to Henley and the subsequent conveyances under which defendants claim title were made and recorded while plaintiff was in possession of the premises. No reference is made to any of the leases.

Defendants, by their answers, denied the allegations of the conveyance in 1855, the ownership, and the possession, alleged their own ownership by mesne conveyances under the deed from Noyes to Henley, and their possession thereafter, as well as a 20-year limitation title. They further asserted title by estoppel, based upon their alleged knowledge and reliance upon the recital of plaintiff's predecessors' disclaimer of interest in the premises found in the decrees of 1871 and 1876; the latter recorded in Coles county in 1877, at and prior to their respective purchases of the property. Defendants further set up the adequacy of a remedy at law. By amendment defendants prayed relief as under a cross-bill, to quiet their respective titles to the premises in question.

Edward C. Craig and Bryan H. Tivnen, both of Mattoon, Ill., for appellants.

James Vause, Jr., of Mattoon, Ill., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). The bill was not subject to demurrer or motion to dismiss. On its face it set out a good cause of action. The main controversy is whether the essential averments of possession and title have been proven. Plaintiff offered no evidence whatsoever as to the possession of the premises at the date of the commencement of its suit in 1913. It relied apparently upon the contention that the property conveyed to it by Noyes in 1855 became a part of and extended the boundaries of the railroad right of way; that the lease of 1859, read in the light of this extended right of way, must be deemed to have included all of the land on which the hotel building was to stand and so much of the adjoining open space appurtenant thereto as was owned by the lessors, and that, because defendants claimed title through a deed made by Noyes, the original lessee, during the pendency of the lease, they were estopped to deny plaintiff's title or possession.

It is entirely unnecessary to consider the extent of a tenant's estoppel, inasmuch as we cannot concur in this interpretation of the lease of 1859. The description of the premises thereby let is clear and cer-

tain. There is no ambiguity of any kind. Only the south line of the Terre Haute, Alton & St. Louis Railroad's right of way as originally established runs parallel to the center line and in a southwesterly direction. The south line of the property described in the 1855 deed runs due east and west. That the railroad, in 1855, had acquired title to the strip now in question, adjoining its right of way on the south, and that the hotel was located on both the strip and the right of way, furnish no sufficient reason to construe the clear and unambiguous language of the lease, so as to include therein either this entire strip outside of the original right of way or even so much thereof as was covered by the hotel building.

The failure to include this strip in the lease may have been due to the acquiescence of the railroad in Noyes' view, as testified to by him in 1870, in the course of the proceedings above referred to, namely, that he had deeded this north part of block 116 to the railroad for a freight house, and as this had been removed before he agreed, in 1856, to convey the block to Radcliffe, the title thereto had reverted to him. But it is idle to speculate on the reasons which influenced the parties to exclude the strip from the lease. It suffices that plaintiff has failed to prove that Noyes was its lessee as to the property in suit, or that it was in possession thereof in 1913. The evidence however, goes further; it demonstrates that neither in 1859 nor at any time thereafter, prior to 1910, did the railroad in any manner whatsoever assert any right in and to the strip. Even in 1899, when, on the expiration of the lease, it demanded possession, and in 1900, when it executed a new lease for a nominal consideration, terminable on 30 days' notice, it adopted the same description of the premises as in 1859. Its own official annual schedules of property in Coles county and its maps fail to include this strip as part of its right of way or property. Indeed, the description of the right of way as 100 feet wide necessarily excludes it as part thereof.

Concededly a tenant is not estopped from contesting his landlord's title to property adjoining the leased premises, or from acquiring title thereto by adverse possession. Whatever may be said of the earlier deeds in defendants' chain of title, at least as early as the deed from Moulton to Messer, in 1880, this distinction between the leasehold interest in the right of way and the fee simple in the strip in question is clearly stated. From that time on, if not before, as the evidence abundantly proves, defendants and those under whom they claim not only had actual, notorious, exclusive, and continuous possession, but they held it adversely to the plaintiff, under an express claim and color of title. The lessee under the 1900 lease and his assignee testify that they were also the lessees of Messer as to the strip in question, and that, while paying rental to the railroad for so much of the hotel property as is located on the right of way described in the lease, they also paid rental to Messer and his grantees for the use of the property here in question.

Within two or three years before this suit was brought a portion of the building located on the strip in question was, however, for the first

time used by the plaintiff railroad; at that time, the west part of the building, marked on the Shinn map "Baggage Room," was rebuilt as there shown, extending beyond the right of way onto block 116. Except as to this part, the record fails clearly to disclose who was in the actual possession of the hotel building at the time this suit was brought. The last assignment of the 1900 lease testified to was made in 1910. The assignee therein was not a witness, and it does not appear whether or not he ever held that part of the hotel building that was on block 116 as defendants' tenant, or whether he continued in possession of any of the property. The evidence does, however, prove that the land between the hotel building and the lots in that block was in the actual possession of defendants.

As plaintiff, therefore, has not only failed to prove its actual possession of the property in question at the time it began these proceedings, but is also barred by laches and limitations from asserting as against these defendants any title under the 1855 deed, the decree must be reversed, and the cause remanded, with directions to dismiss the bill for want of equity. And, as defendants concede that under these circumstances no relief can be granted on the answers as cross-bills, they, too, will be directed to be dismissed, but without prejudice.

And it is so ordered.

3. TOWAGE ⬤⟿11(5)—LIABILITY FOR LOSS OF TOW—PROXIMATE CAUSE OF LOSS —STRANDING.
    The loss of the cargo of a barge while aground in Lake Superior, where she had been stranded through the negligent navigation of the towing steamer in a fog, caused by her breaking up in a storm which arose within an hour after she went aground, held the proximate result of the stranding, in view of the fact that storms on that lake so often follow foggy weather.
    [Ed. Note.—For other cases, see Towage, Cent. Dig. § 17.]

4. TOWAGE ⬤⟿12(1)—STRANDING OF TOW—CONTRIBUTORY FAULT OF TOW.
    A barge in tow of a steamer held not chargeable with contributory fault for her stranding in a fog, because she starboarded after the

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes